UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,                      No. 23-cr-20034

v.                                  Hon. Sean F. Cox

STEVEN JOHNSON

      Defendant.

_____/

## GOVERNMENT'S SENTENCING MEMORANDUM AND RESPONSE TO DEFENDANT'S MOTION FOR A DOWNWARD VARIANCE

Defendant Steven Johnson participated in a scheme to defraud state unemployment insurance agencies during the Covid-19 pandemic. At a time when many Americans lost their jobs due to widespread illness and Covid lockdowns and relied on unemployment assistance to survive, Johnson took advantage of the dire situation and stole the identities of unwitting victims to make easy money.

Johnson was charged by Information and pleaded guilty pursuant to a Rule 11 agreement to one count of wire fraud, in violation of 18 U.S.C. § 1343. In the Rule 11, the parties agreed that the actual loss amount attributable to Johnson's false claims should control when calculating the guideline range, which the parties calculated as 27 to 33 months. (ECF No. 38, PageID.139.) The Probation Department completed a presentence investigation report, which used the intended

1

loss to calculate a guideline range of 41 to 51 months, based on a Total Offense Level of 22 and a Criminal History Category of I.  The defendant objected to the PSR based on the use of the intended loss amount, and that issue remains outstanding. (ECF No. 43.) Sentencing is set for June 14, 2023.

For the reasons set forth below, the government recommends that a sentence of imprisonment of 30 months, to be followed by a two-year term of supervised release, is "sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3353(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008).

## I.    FACTS AND PROCEDURAL HISTORY

### A.    Unemployment Insurance Fraud Scheme

Between on or about April 1, 2020, through on or about October 25, 2020, Johnson used the personal identifying information of other people without their consent to file fraudulent unemployment insurance (UI) claims. (PSR ¶ 20.) His goal was to steal unemployment insurance benefits from state unemployment insurance agencies. (*Id.*)

In furtherance of the scheme, Johnson used without authorization the personal identifying information of the purported claimants, and in turn the state UI agencies would generate a unique UI claim number for each fraudulent claimant, and claims were paid out under that unique claim number for each claimant.  (*Id.*)

2

Johnson sent text messages with other individuals discussing the fraud that he was committing. For example, text communications between Individual 1—who has been indicted in a separate federal cause for committing UI fraud and aggravated identity theft—and Johnson confirm that Johnson was committing UI fraud. For example, on July 4, 2020, Johnson and Individual 1 exchanged the following text messages:





(*See* HARRISON_ALL_000001, PDF pgs. 10848-49; PSR ¶ 21.) In these messages, Individual 1 texted PII, including names, dates of birth, and Social Security numbers of victims to Johnson and then explained to him that he should file fraudulent UI claims in Pennsylvania. Individual 1 then explained to Johnson how to Google an address in the application state to file the claim, but to use a mailing address in Michigan where he could retrieve the mail and receive payment from the state agencies. (PSR ¶ 22.)

On August 2, 2020, Individual 1 and Johnson exchanged additional text messages regarding their filing of fraudulent false unemployment insurance claims in California, and explaining that the payout on fraudulent California claims is at least $17,000 ("17bandz") per claim:



(*Id.* at PDF pg. 19837; PSR ¶ ).

On August 20, 2020, Johnson and Individual-1 exchanged text messages, again about filing fraudulent UI claims in California:



In this string of messages, Individual 1 sent Johnson a screen shot of fraudulent California UI claims paid out in the name of a single victim. Johnson "loved" the image. Individual 1 and others, who have been indicted in a separate federal case, rented a house in Los Angeles, California through Airbnb to file fraudulent claims more easily and successfully in California. To accomplish this, while in California, the individuals rented P.O. boxes and used other California addresses to access fraudulent UI mailings more quickly. The reservation dates for that group were August 25, 2020 through September 8, 2020. When Johnson asked Individual 1 to let him know as soon as he got there, Johnson was referring to Individual 1's trip to California to commit UI fraud. (PSR ¶¶ 24-25.) On August 21 and 22, 2020, Johnson filed fraudulent California UI claims from his IP address using mailing addresses in California.

Finally, on August 27, 2020, Johnson and Individual 1 sent additional messages about committing UI fraud in California. The other individual sent Johnson a screenshot of deposit account information that included a victim name showing that there was an available balance of over $19,000. Johnson asked Individual 1 when he certified the claim, to see how quickly it paid out. Johnson then admitted that he had a fraudulent claim paid recently, and that he was waiting for the benefits:





In total, over 36 fraudulent UI claims have been tied to Johnson.  Between April 1, 2020 and October 25, 2020, approximately 24 fraudulent UI claims were filed from an IP address assigned to Johnson at his home address in Detroit.  (PSR ¶ 26.) Four claims were filed listing his home address as the purported claimant's address. Johnson used the personal identifying information of the purported claimants to file these claims without their knowledge or consent. (*Id.*)

On August 11, 2021, federal agents executed a search warrant and seized cellular phones linked to Johnson.  The telephones linked to him contained personal identifying information for several individuals, including for individuals who were listed as the purported claimants on UI claims filed from the IP address assigned to Johnson.  (PSR ¶ 27.)

In total, Johnson has been associated with fraudulent UI claims with a total intended loss amount of $559,459, and an actual loss amount of $180,132.  (PSR ¶¶ 28-29.)

**B.     Procedural History**

On January 17, 2023, the government filed an Information charging Johnson

with one count of Wire Fraud, in violation of 18 U.S.C. § 1343. (ECF No. 32.)

On February 13, 2023, Johnson entered a guilty plea to Count 1, pursuant to

a Rule 11 plea agreement. (ECF No. 38.) The parties agreed that the Court would

determine the guideline range at sentencing. The government also recommended

that Johnson's sentence of imprisonment not exceed the midpoint of his guideline

range, as determined by the Court, to be followed by a two-year term of supervised

release.

In the Rule 11 agreement, the parties also recommended that the following

guideline provisions apply in this case:

| | |
|---|---|
| USSG § 2B11(a)(1) | Fraud base offense level |
| USSG § 2B1.1(b)(1)(F) | Loss over $150,000 |
| USSG § 2B1.1(b)(2)(A)(i) | 10 or more victims |
| USSG § 2B1.1(b)(11)(A)(ii) or (C)(i) | Use of authentication feature or use of ID unlawfully to produce/obtain other ID |

(ECF No. 38, PageID.139.) The recommended loss amount was the actual loss to

the state agencies associated with Johnson's fraud. Finally,    the    government

recommended that the Court order Johnson to pay restitution in the amount of

$180,132. (*Id.* at PageID.142.)

10

The Probation Department completed a presentence investigation report that calculated a guideline range of 41 to 51 months, based on a Total Offense Level of 22 and a Criminal History Category of I.  There is one outstanding sentencing issue related to the loss amount, and sentencing is set for June 14, 2023.

## II.    OUTSTANDING SENTENCING ISSUE

In the Rule 11 agreement, the parties agreed pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B) that the actual loss of $180,132 sustained by the state unemployment insurance agencies because of Johnson's fraud should control for calculating his guideline range. (ECF No. 38, PageID.139.) This would result in a 10-point enhancement under U.S.S.G. § 2B1.1(b)(1)(F), and in a guideline range of 27 to 33 months. The Probation Department calculated Johnson's guideline range based on the intended loss amount of $559,459, which would result in a 14-level enhancement under U.S.S.G. § 2B1.1(b)(1)(H), and a guideline range of 41 to 51 months. (PSR ¶¶ 40, 85, 86.) Johnson submitted an objection to the PSR and outlined his objection in his motion for a sentence notwithstanding the advisory guideline range and request for a variance. (ECF No. 43.)

Because the parties agreed that the actual loss amount should be used to calculate the guideline range, the government requests that this Court apply a 10-level enhancement based on the actual loss in this case, instead of a 14-level enhancement based on the intended loss, for a guideline range of 27 to 33 months.

11

This is the same guideline range that Johnson argues should apply, and therefore the parties agree. (ECF No. 43, PageID.295.) In this case, the government believes that the use of the actual loss number appropriately reflects the seriousness of the offense and will avoid sentencing disparities between Johnson and other similarly situated defendants charged with similar crimes.

## III.    SECTION 3553(A) FACTORS

Congress provided the objectives and factors that courts are to consider when imposing a sentence in 18 U.S.C. § 3553(a). The government addresses the most relevant § 3553(a) factors below, and respectfully submits that they support a sentence of imprisonment of 30 months, to be followed by a two-year term of supervised release. The government disagrees with Johnson, however, that a sentence below the guideline range of 27 to 33 months is appropriate in this case.

### A.    The Nature and Circumstances of the Offense

The nature and circumstances of Johnson's offense are serious.  He defrauded several state unemployment insurance agencies during a global pandemic, at a time when many Americans relied on unemployment insurance to survive.  In total, he defrauded the state agencies of $180,132, and used the personal identifying information of dozens of victims to commit the fraud.

### B.    The History and Characteristics of Johnson

Johnson is a Criminal History category I based on one criminal history point.

(PSR ¶¶ 52, 55.)  He was sentenced to six months' probation for Disorderly Person in April 2013, and his conviction was later set aside. (PSR ¶ 51.) He was convicted of Malicious Destruction of Fire or Police Property and Assault and Battery (both misdemeanors), and was sentenced in September 2014 to one year probation, with fines. In 2021, his conviction was set aside. (PSR ¶ 52.)  He also has two driving offenses in 2014 and 2019. (PSR ¶¶ 53-54.)

Johnson argues that when fashioning his sentence, the Court should consider a new guideline provision amendment for certain Zero-Point offenders that does not go into effect until November 1, 2023. (ECF No. 43, PageID.291-92.) But this is inappropriate for two reasons. First, as the defendant admits, this amendment is not yet in effect, and the Court must use the version of the Guidelines Manual in effect on the date of sentencing. *See* U.S.S.G. § 1B1.11(a). Second, the proposed amendment only applies to individuals who have zero criminal history points, and Johnson has one. *See* https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20230405_prelim-RF.pdf, PDF pg. 80-81. Therefore, even if Johnson were sentenced after the amendment takes effect, it would still not apply to him.

Johnson has a history of substance abuse, including alcohol and prescription pill abuse. (PSR ¶¶ 74, 76.) His pill abuse apparently started as the result of a motorcycle accident that he was involved in on October 1, 2021. (PSR ¶ 71.) He

13

admits that he could benefit from substances abuse treatment, which the government recommends that he receive while in prison. He is a high school graduate and currently taking college courses in Tennessee. (PSR ¶ 78.) He is also currently working for Amazon in Mississippi and has an extensive employment history dating back to 2012. (PSR ¶¶ 81-83.)

Johnson does not report a close relationship to his extended family and is not married. (PSR ¶¶ 66, 67.) He has one daughter who used to live with him during the work week, but she now lives with her mother in Redford, Michigan while Johnson lives in Tennessee. Johnson is not ordered to pay child support for his daughter, but states that he supports her financially. (PSR ¶ 67; ECF No. 43-5, PageID.381.)

Overall, despite a solid education and employment history, Johnson decided to commit fraud to make easy money during the Covid-19 pandemic and used the personal identifying information of other people to commit his crime. His history and characteristics support a 30-month sentence.

### C. Seriousness of the Offense, Promotion of Respect for the Law, and Just Punishment for the Offense

A custodial sentence of 30 months will promote respect for the law, reflect the seriousness of the offense, and provide just punishment. Johnson devised a fraud scheme that exploited services provided by the government during a global pandemic and used the information of unwitting victims in the process. A 30-month

sentence would help ensure that he follows the law in the future and does not again turn to fraudulent behavior to make or save money.

### D.      Adequate Deterrence and Protection of the Public

Deterrence and protection of the public are important considerations in this case.  As the Court knows, there has been a marked spike in fraud committed against the government related to pandemic assistance.   The government provided this assistance as a lifeline to individuals who were struggling during the unprecedented and difficult circumstances posed by the global Covid-19 pandemic and associated lockdowns.  But many chose to exploit the pandemic to make quick money at the expense of government agencies.  A 30-month sentence in this case would serve the interest of deterring others from committing similar fraud and protect the public, including government agencies, from further crimes by Johnson and other would-be defendants.

### E.      The Need to Avoid Unwarranted Sentencing Disparities.

Johnson accurately states the United States Sentencing Commission's JSIN information for a Total Offense Level of 18 and Criminal History Category I: the average length of imprisonment was 19 months, and the median length of imprisonment was 20 months. (ECF No. 43, PageID. 274.) But it is unlikely that all defendants who share an offense level and criminal history level with Johnson used the personal identifying information of dozens of victims to commit their offenses,

particularly during a global pandemic when those individuals may have needed unemployment or other government assistance themselves. This is an aggravating circumstance that warrants a 30-month sentence.

## IV.   CONCLUSION

For the reasons described above, the Government respectfully recommends a sentence of imprisonment of 30 months, to be followed by a two-year term of supervised release. The government further submits that, for the reasons stated above, a downward variance below 27 months would be inappropriate in this case.

Respectfully submitted,

DAWN N. ISON
United States Attorney

*s/ Meghan S. Bean*
Meghan Sweeney Bean
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit, MI  48226
(313) 226-0214
meghan.bean@usdoj.gov

Dated: June 7, 2023

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on June 7, 2023, I electronically filed the foregoing document

with the Clerk of the Court of the Eastern District of Michigan using the ECF system

which will send notification of such filing to all counsel of record.

*s/ Meghan S. Bean*
Meghan Sweeney Bean
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit, MI  48226
(313) 226-0214
meghan.bean@usdoj.gov
